## Ionathan Stetson, Guardian, *versus* Moses Bass, Executor.

An account settled before a judge of probate, may be opened by him for the purpose
of correcting an error.

The error may be corrected upon a petition for that purpose, or upon the settlement
of a new account; or if the party aggrieved has a right of appeal at the time when
the mistake is discovered, it may be corrected in this Court upon an appeal.

The widow of an intestate having administered on his estate and settled her account
in the probate court, paid over the balance in her hands to the guardian of the in-
testate's son. Afterward she married the guardian. The guardian died, and his
executor settled in the probate court an account of his guardianship, and afterwards
applied to that court to correct an error in a single item of the account so settled.
The judge of probate determined that there was an error, and that it should be
corrected. From this decree the ward appealed, and in this Court an auditor was
appointed to state the accounts between the parties. *Held*, that the auditor could
not go behind the settlement of the administration account, to show that it was er-
roneous, and so to charge the guardian with more than he had received from the
administratrix.

At a court of probate held in August 1826, Bass, executor
of the last will of Thomas Eaton, presented a petition praying
for an allowance of his account against Samuel Breck, a minor
under the guardianship of Stetson, upon which petition a de-
cree was passed allowing the account. From this decree Stet-
son, as guardian, appealed for the following reasons.

1. The account consisted of one item only and the interest
thereon, which had been included in the executor's account
settled in March 1825, in the probate court, from which set-

tlement the executor had not appealed ; and Stetson says that the probate court have no jurisdiction of the same at this time.

2. That item has been settled in an account stated between Stetson and Bass, April 21st, 1825, and mutual receipts have passed, and that settlement and statement cannot be revised by the court of probate.

3. Bass prays for credit of $268·33, because he had in a former account wrongfully credited that sum, and Stetson says that that item was not wrongfully credited, nor did Bass prove that such was the case.

4. That item was but one among many items which had been settled by compromise, and it cannot now be recharged without destroying a compromise made by the parties with full knowledge of all the facts now brought forward, and the estate of the ward would be materially injured by settling the account in this way.

5. Because the claim of Bass is a proper subject for discussion and determination in the courts of common law, in an adversary suit between Bass and Stetson, and is not within the jurisdiction of the court of probate.

In this Court the case was referred to an auditor ; who reported, that Samuel and Joseph Breck were the only children of Samuel and Ruth C. Breck ; that Samuel, the father, died in the spring of 1809 ; that Ruth was appointed administratrix on his estate, and that she settled her account in the probate office in August 1809, by which it appears that there was a balance in her hands of $7078·36 ; that in May 1816, Ruth married Thomas Eaton, the testator, and that she died in February 1817 ; that on December 4th, 1815, Eaton was appointed guardian to Samuel, the minor, and that no account was settled in the probate court by Eaton previous to his death, which took place in December 1824 ; and that on March 21st, 1825, Bass, as executor of Eaton, settled the guardianship account of Eaton in the probate court, Stetson at that time being guardian to the minor and attending to the settlement.

In this account the ward is credited with $268·33, being one third of the sum due on a note for $805 made by one Magoun, dated April 1st, 1824. No inventory of the property

ot the minor was returned to the court of probate by Eaton as guardian. In a memorandum in Eaton's hand-writing, dated May 30th, 1816, of notes belonging to the heirs of Samuel Breck the elder, all the notes described in the guardianship account were included, except this note of Magoun. There was other evidence stated by the auditor, tending to show that Magoun's note belonged to Eaton. By the memorandum it appeared, and it was admitted by Bass, that the ward's property in the hands of Eaton, at the date of the memorandum, was $ 2560·92.

On April 29th, 1825, a settlement took place between Bass as executor, and Stetson as guardian, in which the sum of $ 268·33, one third part of Magoun's note, was credited to the ward. On March 7th, 1826, Bass presented a petition to the court of probate, praying to be allowed the sum of $ 268·33 and interest to that date, amounting in the whole to $ 285·72, and alleging that the former sum had been erroneously credited to the ward. The judge of probate allowed the guardianship account to be corrected accordingly ; which was the cause of the present appeal.

The counsel for Stetson contended before the auditor, that an investigation of the administration account of Ruth C. Breck should be had ; 1. because Magoun's note was but one among many items which were settled by compromise ; 2. because it cannot be shown that the credit for that note was wrong, without going into the merits of the whole case ; and 3. because it was suggested that there were no other sources of property coming to the ward than those disclosed by Bass, but the ad ministration account shows that the sources of property are more than sufficient to cover the supposed error. But this was refused by the auditor, on the ground that his commission confined him to an investigation of the facts relative to the note of Magoun, the allowance of which by the judge of probate was the sole ground of this appeal.

The auditor stated an account between the ward and Eaton, his former guardian, by which it appeared that the amount actually overpaid by Bass to Stetson was $ 2·50 less than the sum allowed to Bass by the judge of probate in the decree appealed from.

3 *

*Eddy*, for the appellant, to the point, that the guardian's account ought not to have been opened, cited *Pit* v. *Cholmondely*, 2 Ves. jun. 565 ; *Bilbie* v. *Lumley*, 2 East, 469 ; 2 Stark. Ev. 112 ; *Drew* v. *Power*, 1 Sch. & Lefr. 182, 192 ; 2 Com. Dig *Chancery*, 2 *A* 3 ; *Cowper* v. *Cowper*, 2 P. Wms. 733 : — And to the point, that Eaton should have paid the debts of his wife, the administratrix ; *Bachelor* v. *Bean*, 2 Vern. 61 ; *Sanderson* v. *Crouch*, ibid. 118 ; *Norton* v. *Sprig*, 1 Vern. 309.

*Gay* and *L. Williams*, for the appellee.

WILDE J. delivered the opinion of the Court. We think there can be no doubt of the right and authority of a judge of probate to open an account settled, for the purpose of correcting a manifest mistake. In the proceedings of all courts errors and mistakes will occur, and frequently without the fault of either party, and justice requires that some method should be provided for the correction of such errors and mistakes, in whatever court they may occur. In courts of common law jurisdiction the remedy is by writ of error, motion for new trial or application for a writ of review ; but these remedies are not applicable to the proceedings of a court of probate. In that court, when a mistake is made in the settlement of an account, the course is to apply to the judge of probate for the correction of the mistake, by petition, or to state the amount claimed in a new account ; unless when the mistake is discovered the party has a right of appeal, by which it may be corrected in this Court.

This practice seems to be well settled, and in several cases has received the sanction of this Court. It is indeed essentially necessary for the furtherance of justice, and ought not to be too strictly limited. *Stearns et al.* v. *Stearns et al.* 1 Pick. 157 ; *Baylies* v. *Davis et al.* ibid. 206.

The principal question then is, whether there is sufficient proof of the mistake made in the settlement of the account in the probate court, in March 1825, to sustain the decree of the judge of probate in this case. And we are of opinion that the evidence reported by the auditor, considering all the circumstances of the case, is entirely satisfactory.

The appellant's counsel moved the auditor to go into the investigation of the administration account ; which he declined,

· for reasons which appear to us sufficient. And there is an additional reason. If Eaton was responsible for any neglect of the administratrix in not fully accounting for the assets before his intermarriage with her, he clearly was not liable to account for it in the probate court, and in his character of guardian. The decision of the auditor, therefore, was unquestionably right.

It has been objected that the appellee, after the discovery of the mistake, and with a full knowledge of all the facts, acquiesced in the settlement and confirmed it. But the evidence falls far short of proving full knowledge of the facts. According to the testimony of Chapin, both parties had some reason to suppose a mistake had been made, when they met in Boston in April after the settlement; but they had no certain knowledge of the fact, and Stetson then agreed, that if the supposed mistake should be ascertained, he would rectify it. This seems conclusive proof that the matter had not then been fully investigated, and there is no proof in the case, to show that the appellee has done any thing which can amount to a waiver of his legal rights. Such a waiver, in all cases, must be proved by clear and conclusive evidence; and especially when, as in the present case, the party to be concluded by it acts as a trustee for other parties.

And upon the whole matter we are of opinion, that the judge of probate is supported by the evidence, except as to the sum of $2·50; and it is accordingly affirmed with additional interest to the present time, deducting that sum.